**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

DEBORAH ANN ROBERTSON KING
and JANIE MARCELLA WARD,
Co-Personal Representatives of the
ESTATE OF WILSON ROBERTSON, JR.,

      Plaintiffs,

      v.                                                            Case No.: 3:07-cv-467/RV/EMT

SIRAN STACY[1] and COUNTRYWIDE
HOME LOANS, INC.,

      Defendants.
_____/

**ORDER**

This diversity case arises out of a tragic and fatal car accident that occurred around 10:30 in the morning of September 12, 2006, involving a vehicle driven by Siran Stacy (an employee of Countrywide Home Loans, Inc. ("Countrywide")), and a vehicle driven by Wilson Robertson, Jr. Countrywide now moves for summary judgment (doc. 33).

**I. Background**

The following facts are undisputed in the record, unless otherwise noted. At the time of the accident, Stacy lived in Newton, Alabama, and was employed by Countrywide as a home loan consultant. Although he resided in Alabama, he worked out of the Countrywide office located in Destin, Florida. He testified at deposition that it was his usual "pattern" to stay at a friend's house in Destin during the workweek and then return to Newton on the weekends. As part of his job, he traveled throughout the geographic region comprising Walton, Okaloosa and Bay Counties, Florida. Although

---

[1] This name is spelled alternatively in the pleadings as "Stacy" and "Stacey." I will use the former spelling as that is the one that is listed on the docket sheet and the one that appears more frequently in the record.

*Case No.: 3:07-cv-467/RV/EMT*

Countrywide expected him to confine his work to his assigned region, he would, at times, travel to other (and out-of-state) locations as well, "rubbing elbows with realtors, the contractors, the whatnots." Stacy owned and operated his own vehicle; Countrywide did not pay for its mileage, fuel, or maintenance.

On Monday, September 11, 2006, Stacy was in Mobile, Alabama, for a meeting. Although he was unsure of the time, it was dark when he left the meeting, and he arrived in Destin late that night.[2] Rather than stay at his friend's house, he went to the Sleep Inn, which was a hotel right next door to the church he attended while he was in Destin. He planned to attend bible study there at 6:00 the following morning, Tuesday, September 12th, and he testified that: "I wanted to be there close, so I could get up and attend it, and then, I could get up and go take care of the other things I needed to take care of before I came back to Alabama," where he had client meetings planned for "around lunch or a little after lunch." It has been stipulated by the parties that his attendance at the bible study was purely personal and that he was not there in order to "drum up" business for Countrywide.

Stacy did not check-in at the Sleep Inn. Rather, because it was so late when he arrived (and because he did not want to spend "whatever hundred dollars" to rent a room for only a few hours), he decided to sleep in his car in the hotel parking lot. Importantly, he overslept the next day and did not attend the bible study. Because he had overslept, he also did not visit his Countrywide office that morning, nor did he attend the business meeting that he had intended to have in Destin. Rather, he immediately left the Sleep Inn parking lot and, without stopping anywhere, headed towards Alabama for the two meetings he had planned there. He had not yet showered, shaved, brushed his teeth, or changed his clothes from the day before. Nor had he called the clients with whom he was planning to meet in Alabama in order to arrange the

---

[2] As will be discussed *infra*, although Stacy had additional business meetings in Alabama the next day, he returned to Destin instead of staying the night in Alabama because he wanted to attend a 6:00 a.m. bible study in Destin and, also, because he had a business meeting there as well.

*Case No.: 3:07-cv-467/RV/EMT*

time of their meetings.[3] Depending on how much time he spent traveling, he was going to stop by his house in Newton and get ready for his meetings (which included "freshening up" and getting fliers, business cards, and contracts), or, if he did not have enough time for that, he was going to stop by a gas station and get ready in the restroom. In either event, it appears undisputed that Stacy planned to stop and make himself presentable.[4]

While on his way to Alabama, but while still in Florida, Stacy was involved in the accident with Mr. Robertson. Both Robertson and his passenger (his wife, Yoshiko Robertson) died from injuries suffered in the collision. It appears that negligence on the part of Stacy is presumed. Mrs. Robertson's personal representative filed a wrongful death case against Stacy and Countrywide in state court, which settled out-of-court after the trial judge denied summary judgment in favor of Countrywide. Mr. Robertson's personal representatives filed the case *sub judice* also in state court, after which Countrywide removed to this court on the basis of diversity.

Countrywide now moves for summary judgment, and essentially presents a single question: was Stacy within the course and scope of his employment at the time of the accident?

**II. Applicable Law**

---

[3] According to Stacy's deposition testimony, there was no "concrete time" for the meeting, but rather, as noted, it was planned for "around lunch or a little after lunch." Stacy testified that he was planning to call the clients and confirm an exact time once he reached Defuniak Springs, Florida, because his cell phone reception was usually better there. The accident occurred before he reached Defuniak Springs and, apparently, before he called anyone about any Countrywide business.

[4] Countrywide expected its home loan consultants to maintain a professional appearance when dealing with clients. Stacy realized that he could not meet clients in his "slept in the car" appearance. He testified at deposition: "It was depending upon my time, you know. I had ample amount of clothes in my vehicle with me. If I had time to stop by my home, okay, then I would. If I didn't have time to stop by, then I wouldn't. I would just change somewhere else, you know, at a gas station, in a bathroom, which I've done before. So, you know, it was all depending on time."

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). On summary judgment, the record evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non-moving party. *National Fire Ins. Co. of Hartford v. Fortune Const. Co.,* 320 F.3d 1260, 1267-68 (11th Cir. 2003).

The question of whether Stacy was acting within the course and scope of his employment must be resolved by looking to the law of the state where the accident occurred, *see Flohr v. Mackovjak,* 84 F.3d 386, 390 (11th Cir. 1996), and the question is a legal one as there are no genuine disputed issues of material fact. *See Johnson v. Gulf Life Ins. Co.,* 429 So.2d 744, 746 (Fla. 3d DCA 1983). Thus, Florida law applies.

### III. Discussion

This case would be different if Stacy had attended the business meeting that he had scheduled in Destin, if he had gone to the Countrywide office in Destin, or if there was any other evidence in the record that he had actually begun his work for the day. Instead, the undisputed evidence is that, after having overslept and skipped the meeting in Destin, he was on his way to attend meetings in Alabama, but only after he stopped off somewhere to get ready for the day and only after he called his clients to confirm their meeting. On these facts, therefore, he had not yet begun work for Countrywide that morning. The Supreme Court of Florida spoke on this issue more than 60 years ago, and the law is well-settled.

The defendant in *Foremost Dairies, Inc., of the South v. Godwin,* 26 So.2d 773 (Fla. 1946) was employed by a corporation and traveling to work when he was involved in a motor vehicle accident. Florida's Supreme Court noted that in order to determine

whether he was acting within the course and scope of his employment, it was necessary to analyze the relationship between the corporation and the employee "*at the precise time* of the injury." *Id.* (emphasis added). The court went on to hold that the corporation was not liable because the undisputed evidence showed that the defendant "was *on his way to work* when the collision occurred." *See id.* at 774 (emphasis in original). This conclusion, as the court further noted, was "'supported by the weight of authority.'" *See id.* (quoting *Bourus v. Hagen,* 74 P.2d 205, 206 (Wash. 1937)). The *Godwin* court distinguished its case from an earlier Supreme Court of Florida case, *Western Union Telegraph Co. v. Michel,* 163 So. 86 (Fla. 1935), in which an employee started his day's work as a messenger boy and, after delivering two messages in the morning, he decided to go home for lunch (which was "some distance away"). He was involved in a car accident as he was returning to work and the question presented was "whether at the time he was serving his employer or had embarked on an excursion of his own; whether he had slightly deviated from his employer's business; [or] whether he had abandoned it." *Godwin, supra,* 26 So.2d at 774. The *Godwin* court explained that the question presented in *Michel* was not relevant to its case because:

> In the instant case, according to our interpretation of undisputed testimony, Howell had not started the days's work, was not yet in the master's employ; therefore we are unable to understand how his course on the morning of the mishap could be construed as raising the question whether there was a deviation, departure, or abandonment, indicating that his employer might be liable, or that it was a matter for the jury to decide whether the employer was liable. If he had not yet entered upon the master's business, being then on his way to do that, it could not be said that he deviated or departed from his employment or that he abandoned it. Certainly one may not abandon what he has not undertaken, may not deviate or depart from a course which he has not begun.

*Id.* at 774-75. Here, as in *Godwin*, the defendant "had not started the days's work, was not yet in the master's employ," but rather he was "on his way to do that." *See id.* He did not attend the meeting that was scheduled in Destin, stop by his office, or contact the Alabama clients with whom he was meeting several hours later. Liability cannot lie

*Case No.: 3:07-cv-467/RV/EMT*

against the employer on these facts.[5]

*Kunkler v. United States,* 187 F. Supp. 816 (N.D. Fla. 1960) is also instructive. The employee in that case was an airman who departed his assignment in Mississippi on March 17th with instructions to report to his new post in Alabama not later than April 2nd. He was on "delay en route" leave status, during which he purchased a vehicle and drove to visit his grandparents in Florida. After visiting his grandparents and while driving to his new base on April 1st, he was involved in a car accident and the question presented was, as in this case, whether he was within the scope of his employment at the precise time of the accident. In holding that he was not, the district court cited to *Godwin* and other cases, and observed: "Where the travel was between assignments of some permanence, at widely separated geographical points, it has usually been held that the employee was not acting for his employer in traveling." *See id.* at 817 (citation omitted). This is particularly so when the employee deviates from the business of his employer for a "purely private mission" [in *Kunkler* it was visiting grandparents; in this case it was attending a bible study]. The district court explained that an employee who deviates from his assigned tasks for a "purely private mission" is generally not within the scope of his employment "*until he returns to the employer's place of business or the point of departure.*" *See id.* (emphasis added).

## IV. Conclusion

In sum, this is a case in which there are no genuine issues of material fact and the defendant is entitled to judgment as a matter of law. Stacy (who had not yet showered, shaved, brushed his teeth, or changed his clothes from the day before) was

---

[5] Despite that *Godwin* is relevant to this case, and despite that Countrywide relied heavily on that decision in its motion, the plaintiffs have not discussed, tried to distinguish, or cited to that case. Instead, they rely on worker's compensation principles and, furthermore, argue that summary judgment should be barred by *res judicata* and/or the *Pullman* abstention doctrine and the *Rooker-Feldman* doctrine because the state trial judge in Mrs. Robertson's case denied summary judgment in favor of Countrywide. Countrywide previously sought and was granted leave to file a reply to these various arguments. The plaintiffs' arguments are unpersuasive, and they are rejected for the reasons raised in Countrywide's reply (*see* doc. 51).

*Case No.: 3:07-cv-467/RV/EMT*

not acting within the course and scope of his employment while he was driving en route to Alabama for meetings after attempting to attend a bible study in Destin. Thus, Countrywide's motion for summary judgment (doc. 33) is GRANTED. The Clerk shall enter a partial judgment in favor of Countrywide, together with taxable costs.

**DONE and ORDERED this 17th day of March, 2009.**

/s/ *Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**